John DEMONTINEY, d/b/a Earthwalker Engineering, Plaintiff,

v.

UNITED STATES, Defendant.

No. 02–170C.

United States Court of Federal Claims.

Dec. 17, 2002.

Robert L. Stephens, Jr., Southside Law Center, Billings, Montana, for the plaintiff.

Allison A. Page, Trial Attorney, David Cohen, Director, Commercial Litigation Branch, Civil Division and Robert D. McCallum, Jr., Assistant Attorney General, United States Department of Justice, Washington, D.C., for the defendant.

## OPINION

HORN, Judge.

Defendant has moved to dismiss plaintiff's breach of contract complaint, stating that the plaintiff "has not and cannot allege that it is a party to any contract with the United States and has provided no other sufficient basis for this Court's jurisdiction." Plaintiff, however, contends that, "based upon the actual contract documents and their implementation, there was privity between the Plaintiff engineer and the Defendant BIA," so that a contractual relationship did exist between the United States and the plaintiff. Plaintiff relies on this asserted contractual relationship to establish that the United States Court of Federal Claims has jurisdiction in this case.

## FINDINGS OF FACT

In 1992, the Department of the Interior (DOI). Bureau of Indian Affairs (BIA), entered into a Final Design contract, which was modified at least once, with the Chippewa Cree Tribe Business Committee (the Tribe), to develop the final design for modifications to the Bonneau Dam, located on the Reservation. According to the BIA contracting officer, the government entered the Final Design contract with the Chippewa Cree Tribe under the Indian Self–Determination and Education Assistance Act (ISDEAA), Public Law 93–638, 25 U.S.C. § 450 et seq.

Plaintiff, however, focuses in its complaint on the contract, and modification, plaintiff Earthwalker Engineering entered into with the Tribe, according to the complaint, "a

series of agreements calling for the provision of engineering services contracts dated July 16, 1992, and August 6, 1992" for the Bonneau Dam Project. Plaintiff states that the contract it signed "was executed by the Chippewa Cree Tribal Chairman and was approved by the Bureau of Indian Affairs." Plaintiff also alleges that it performed additional work outside the original description of work in the contract in response to express requests and demands of the BIA contracting officer and the Chippewa Cree contracting officer. In its complaint, plaintiff states that the contract was terminated prior to its completion on May 3, 1995, and that the project was 92 percent complete when the contract was terminated. Plaintiff claims $185,419.19 for the balance due on the contract, plus an additional amount of $76,748.64 in interest accrued, for a total claim of $262,168.63.

This case has been before a number of tribunals prior to reaching this court. John Demontiney apparently first filed a complaint for breach of contract against the Tribe in the Tribal Court.[1] Following the Tribal Court's dismissal of his claim, Demontiney filed a claim concerning the alleged unpaid contract balance with a BIA contracting officer. In a decision dated July 8, 1998, the BIA contracting officer stated that since there was no contract between the United States and Demontiney, no relief was available from the BIA.

Demontiney next filed a complaint against the United States and the Tribe in the United States District Court for the District of Montana. The District Court dismissed the claims against the United States and against the Chippewa Cree Indian Tribe, concluding that neither had waived sovereign immunity to suit or had its sovereign immunity negated by Congress. The District Court found that if Demontiney was in privity with the BIA, jurisdiction to pursue a contract claim would be in the United States Court of Federal Claims under the Contract Disputes Act, 41 U.S.C. §§ 601–613 (1994). *Demontiney v. United States*, 255 F.3d at 805. The District Court ordered any remaining claims against the United States transferred to the Court of Federal Claims. The District Court's decision was appealed to the Ninth Circuit Court of Appeals and the dismissal of the United States and the Tribe was affirmed on the grounds that there had been no waiver of sovereign immunity. The Ninth Circuit did not address the issue of whether there was privity of contract between Demontiney's company and the United States. *Id.* at 805.[2]

---

1. In this court, neither party has addressed the proceedings to resolve plaintiff's claims which were filed and dismissed by the Chippewa Cree Tribal Court.

   [The Tribal Court] dismissed the complaint for failure to state a claim. The court found that: (1) the case was moot because the Tribe–BIA contract had been completed and the "Defendant's [sic] have terminated their contractual relationship with the Plaintiff due to Plaintiff's failure to deliver contract documents"; (2) Demontiney had not established that the Tribe had waived its sovereign immunity; and (3) the proper forum for resolving the dispute was the [Tribe's] Business Committee.

   *Demontiney v. United States*, 255 F.3d 801, 804 (9th Cir.2001). Shortly after dismissing the complaint, "the Tribal Court issued another order dismissing the case without prejudice and indicated that its ruling could be appealed within five days," but "Demontiney did not appeal the decision." *Id.* As discussed below, plaintiff subsequently filed a complaint in the federal District Court, which was appealed to the Ninth Circuit Court of Appeals. Plaintiff filed a copy of the Ninth Circuit opinion, *Demontiney v. United States*, 255 F.3d 801, with its response to defendant's dispositive motion, and both parties have cited to the Ninth Circuit opinion in their briefs filed in this court.

2. According to the Ninth Circuit's opinion, affirming the District Court's actions, the plaintiff also alleged that his company, Earthwalker, had "entered into a multi-part contractual agreement with the Tribe to provide engineering services for the dam project, and that the BIA had approved the subcontract and had overseen its performance." *Demontiney v. United States*, 255 F.3d at 804. In federal District Court, the United States filed a motion to dismiss, or, in the alternative, a motion for summary judgment, claiming, among other things, "that Demontiney was not entitled to bring a claim against [the government] under the Contract Disputes Act because there was no privity of contract between Earthwalker and the BIA." *See Demontiney v. United States*, 255 F.3d at 805.

   The district court granted the motions to dismiss of the United States and the Tribe ... [determining] that it lacked jurisdiction over either the United States or the Tribe for Demontiney's contract claims because neither the United States nor the Tribe had waived its

Following the appeal to the Ninth Circuit, this case was transferred from the United States District Court for the District of Montana to the United States Court of Federal Claims on March 5, 2002. Pursuant to Rule 84(a)(2) of the Rules of the United States Court of Federal Claims (RCFC), plaintiff, Earthwalker Engineering, was required either to file the complaint from the District Court, with the necessary changes in the caption and in conformance with RCFC 82, or to file an amended complaint setting forth the claim or claims transferred, on or before April 2, 2002. Plaintiff did not meet the court's filing deadline. On April 11, 2002, plaintiff was ordered to show cause, on or before May 10, 2002, why the court should not dismiss plaintiff's claim.

On July 16, 2002, the court received and filed plaintiff's counsel's untimely response to the court's order to show cause, accompanied by an amended complaint and affidavits from plaintiff's counsel and a paralegal in the Southside Law Center working with plaintiff's counsel. According to the affidavit of plaintiff's counsel, the filing of the amended complaint was delayed because plaintiff's counsel had difficulty communicating with his client. Plaintiff's counsel claimed he filed the documents in spite of a lack of contact with the plaintiff in order to preserve the plaintiff's cause of action, and further claimed that the delay in filing was due to his confusion as to whether he had been admitted to the bar of the United States Court of Federal Claims.

This court ordered the plaintiff, Mr. Demontiney, to file an affidavit with the court on or before June 7, 2002, indicating whether he wished to continue the suit. The affidavit was filed and indicated that Mr. Demontiney had experienced serious health problems, but requested his attorney to proceed with the case before this court. The court, therefore, ordered the amended complaint to be filed.

## DISCUSSION

The defendant has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1). Although defendant argues for dismissal based on subject matter jurisdiction, RCFC 12(b)(1), the proper basis to argue lack of privity is RCFC 12(b)(6), for failure to state a claim upon which relief can be granted. Therefore, because the court has been presented with matters outside the pleadings by both parties, upon which the court has relied, an otherwise proper RCFC 12(b)(6) motion is treated as a RCFC 56 motion for summary judgment. *See* RCFC 12(b). In a procedurally similar case, the United States Court of Appeals for the Federal Circuit concluded that summary judgment was warranted in a case in which there had been no privity of contract between the parties:

> Considering matters outside the pleadings, the court treated the government's motion to dismiss as a motion for summary judgment, in accordance with Rule 12(b) of the Court of Federal Claims ("RCFC").... We hold that there was no privity of contract between HUD and the Owners with respect to prepayment of the deed of trust notes.... The court should have granted summary judgment in favor of the government on the breach of contract claims.

*Cienega Gardens v. United States,* 194 F.3d 1231, 1236, 1246 (Fed.Cir.1998), *cert. denied sub nom. Sherman Park Apartments v. United States,* 528 U.S. 820, 120 S.Ct. 62, 145 L.Ed.2d 54 (1999); *see also Warr v. United States,* 46 Fed.Cl. 343, 348, 350 (2000) (when privity of contract was not established between the government and a tenant of Native American allottees, the government's motion to dismiss for failure to state a claim upon which relief could be granted was treated as a motion for summary judgment, because the court considered matters outside the pleadings.)

---

sovereign immunity or had its sovereign immunity abrogated by Congress. The district court also found that if [Demontiney's company] Earthwalker was in privity with the BIA, then Demontiney would have jurisdiction to pursue his contract claims against the United States

under the Contract Disputes Act in the Court of Federal Claims. Without making this privity determination, the district court transferred Demontiney's claims against the United States to the Court of Federal Claims.
*Demontiney v. United States,* 255 F.3d at 805.

Plaintiff's claim in his amended complaint, which asserts a contractual obligation on the part of the government, provides a basis for jurisdiction in the United States Court of Federal Claims. As the United States Court of Appeals for the Federal Circuit stated in *Trauma Service Group v. United States:*

> To show jurisdiction in the Court of Federal Claims, TSG [the plaintiff] must show that either an express or implied-in-fact contract underlies the claim. A well-pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction. *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686 (Fed.Cir.1992). TSG's complaint alleges that an express and, in the alternative, an implied-in-fact contract underlies its claim. This allegation suffices to confer subject matter jurisdiction in the Court of Federal Claims. *See Gould [, Inc. v. United States,* 67 F.3d 925, 929 (Fed.Cir.1995)]; *see also Do-Well Mach. Shop. Inc. v. United States,* 870 F.2d 637, 639–40 (Fed.Cir.1989) ("Jurisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.") (quoting *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)).

*Trauma Serv. Group v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997); *see also Warr v. United States,* 46 Fed.Cl. at 350.

RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.), *reh'g denied and reh'g en banc denied* (2001); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed.Cir. 2001); *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996), *reh'g denied* (1997); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,* 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), *aff'd,* No. 01–5143, 2002 WL 31724971 (Fed.Cir. Dec.3, 2002); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed. Cir.), *reh'g denied and en banc suggestion declined* (1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party

should prevail without further proceedings. Summary judgment:

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

*Dehne v. United States,* 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex, Inc.,* 739 F.2d 624, 626 (Fed.Cir.1984)), *vacated on other grounds,* 970 F.2d 890 (Fed.Cir.1992); *United States Steel Corp. v. Vasco Metals Corp.,* 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 971 (Fed.Cir.2001), *cert. denied,* 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.,* 179 F.3d 1350, 1353 (Fed.Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. at 587–88, 106 S.Ct. 1348; *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Wanlass v. Fedders Corp.,* 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (1998).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Trilogy Communica-*

tions, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994), *reh'g denied and en banc suggestion declined* (1995)), *reh'g denied and en banc suggestion declined* (1997); *Lockwood v. ·Am. Airlines, Inc.,* 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines v. United States,* 204 F.3d 1103, 1108 (Fed. Cir.2000); *see also Schoell v. Regal Marine Indus., Inc.,* 247 F.3d 1202, 1207 (Fed.Cir. 2001).

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party must go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)); *Chevron USA, Inc. v. Cayetano,* 224 F.3d 1030, 1037 n. 5 (9th Cir. 2000), *cert. denied,* 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D. H. Overmyer Leasing Co.,* 401 F.2d 689, 692 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also B.F. Goodrich*

Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir.2001); *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l., Inc.*, 140 F.3d 1, 2 (1st Cir.1998); *Reading & Bates Corp. v. United States*, 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed.Cir. 2001); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1338–39 (Fed.Cir.2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002). After reviewing the parties' submissions, the court finds that there are no material facts in dispute.

The contract at issue in this case, by its terms, was entered into between the Chippewa Cree Tribe and Earthwalker Engineering. Plaintiff states that the funding for the contract between the Tribe and Earthwalker came from "appropriations to the tribe by the Bureau of Indian Affairs pursuant to a '638 Contract' … designating the BIA as an 'executive agency' for purposes of contracts disputes arising under the Indian Self–Determination Act."[3] Pursuant to 25 U.S.C. § 450h (1994), the Secretary of the Interior is authorized to contract with or make grants to Tribes for various projects, such as the Bonneau Dam. While the funding for the project that was the subject of the contract between Earthwalker and the Tribe may flow from the BIA's grant, pursuant to 25 U.S.C. § 450, this does not establish Demontiney as a party to the Indian self-determination contract between the government and the Tribe.

The law specifically provides that a "638 contract" based on Public Law 93–638, codified at 25 U.S.C. § 450 et seq., also known as a "self-determination contract," can only be formed between a Tribe and the United States government. *See* 25 U.S.C. §§ 450b(j) (1994); *see also Demontiney v. United States*, 255 F.3d at 807 (stating "Congress did not intend self-determination contracts to include contracts entered into by private parties."); *Dawavendewa v. Salt River Project Agric. Improvement & Power District*, 154 F.3d 1117, 1123 (9th Cir.1998) (concluding that self-determination contracts only involve situations "arising pursuant to particular contracts between tribes and two departments within the federal government."); *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir.1995), *cert. denied*, 517 U.S. 1134, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996) ("[T]he ISDEAA [Indian Self–Determination and Education Assistance Act] does not contemplate that a private party such as [plaintiff] can enter into a self-determination contract."); *Wooten v. Hudson*, 71 F.Supp.2d 1149, 1152–53 (E.D.Okla.1999) (holding that private individuals or contractors cannot enter into a self-determination contract and only a Tribe and the appropriate Secretary may do so).

Since Earthwalker could not have been a party to the contract between the Tribe and the BIA by statute, this court will review the plaintiff's claim based on plaintiff's allegations that there was a contractual relationship with the government due to the government's oversight role in the contract between the Tribe and Earthwalker. Plaintiff asks this court to find that there is privity as a matter of law with the BIA under contracts originating under Public Law 93–638. Plaintiff also seeks to demonstrate that the BIA was involved directly in the contract between the plaintiff and the Tribe, as evidenced by the defendant's general supervisory powers, including BIA's approval role, the authority to direct changes to the contract, and the authority to withhold payments to the Tribe if the BIA was dissatisfied with the performance of the contract. The defendant ac-

---

**3.** The term "638 Contract" is based on the Indian Self–Determination Act, Public Law 93–638, which is codified at 25 U.S.C. § 450 et seq.

knowledges in its filings with the court that the "BIA commented [on] and reviewed the proposed design of the project to insure the Tribe complied with the specifications of the BIA–Tribe contract ... answered questions and made recommendations in response to Tribe requests ... [and] approved the release of funds to the Tribe ...." The issue presented, therefore, is whether the plaintiff can demonstrate the requisite privity of contract with the government.

In a case in which privity of contract between the claimant and the government was not found, the United States Court of Appeals stated:

> Under the Tucker Act, the Court of Federal Claims has jurisdiction over claims based on "any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (1994). We have stated that "[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government ...." *Ransom v. United States,* 900 F.2d 242, 244 (Fed.Cir. 1990). In other words, there must be privity of contract between the plaintiff and the United States. *See Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984) ("The government consents to be sued only by those with whom it has privity of contract."). The effect of finding privity of contract between a party and the United States is to find a waiver of sovereign immunity. *See National Leased Hous. Ass'n v. United States,* 105 F.3d 1423, 1436 ( Fed.Cir.1997) ....

*Cienega Gardens v. United States,* 194 F.3d at 1239. Privity is a prerequisite for entertaining plaintiff's claim.

The BIA has been assigned responsibilities to act as a manager and protector of Native American affairs. "The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior ... have the management of all Indian affairs and of all matters arising out of Indian relations." 25 U.S.C. § 2 (1994).

> Congress has established the Bureau of Indian Affairs within the Department of the Interior, under the direction of the Commissioner of Indian Affairs ... [to]

manage all Indian affairs and all matters arising out of Indian relations with a just regard not merely to the rights and welfare of the public, but also to the rights and welfare of the Indians, and to the duty of care and protection owing to them.

41 Am.Jur.2d Indians § 36 at 515–16 (1995) (footnotes omitted); see also *Brown v. United States,* 86 F.3d 1554, 1562–63 (Fed.Cir. 1996) ("The [BIA] regulations thus make it clear beyond any doubt that the Secretary exercises his or her control over commercial [activity] on allotted lands not only for traditional general welfare purposes ... but also for the purpose of protecting the allottees' financial interests.").

The United States Supreme Court decision in *United States v. Algoma Lumber Co.,* 305 U.S. 415, 421, 59 S.Ct. 267, 83 L.Ed. 260 (1939), provides an example of the government's role as a manager and protector of Native American affairs. The *Algoma* case involved a contract providing for the sale of timber on the Klamath Reservation. *Id.* at 417, 59 S.Ct. 267. The contract was entered into between the Superintendent of the Klamath Indian School for and on behalf of the Klamath Indians and the Algoma Lumber Company and was approved by an Assistant Secretary of the Interior. *Id.* at 419, 59 S.Ct. 267. The Algoma Lumber Company bought suit against the Department of the Interior for overpayments made to the Superintendent, claiming that:

> the manner of sale ... prescribed by the Secretary, that the contracts be executed by the Superintendent and approved by the Secretary, and that the prices of lumber be fixed by the Indian Commissioner, indicate a purpose to make the United States, acting as guardian or trustee of the Indians through the Secretary and Superintendent, the .contracting party.

*United States v. Algoma Lumber Co.,* 305 U.S. at 422, 59 S.Ct. 267. The Supreme Court in *Algoma Lumber* noted that:

> the government has plenary power to take appropriate measures to safeguard the disposal of property of which the Indians are the substantial owners. Exercise of that power does not necessarily involve the assumption of contractual obligations by the

government. Their assumption is not to be presumed in the absence of any action taken by the government or on its behalf indicating such a purpose.

*Id.* at 421, 59 S.Ct. 267. The *Algoma* court concluded, regarding the actions taken by the Superintendent and the Secretary in contracting, that:

all that was done by the government officials in supervising the execution of the contracts and their performance was consistent with the exercise of its function as protector of the Indians without the assumption by the United States of any obligation to the purchasers of the timber, and no implied obligation on its part arises from the performance of that function.

*Id.* at 422, 59 S.Ct. 267. A similar analysis is found in *Sucesion J. Serralles, Inc. v. United States,* 46 Fed.Cl. 773, 787 (Fed.Cl.2000). In *Serralles, Inc.,* the court stated:

The fact that the Government is involved in the preparation of a contract document between two non-federal parties does not ipso fact make the Government a party to that contract. The Government can, as a condition of providing federal assistance ... to one or both of the parties, require that their contract conform to certain standards, follow a particular format, include certain terms, and/or be approved by the responsible federal agency without thereby waiving the Government's sovereign immunity and establishing privity of contract between the Government and either non-federal party with respect to the terms of that contract.

*Sucesion J. Serralles, Inc. v. United States,* 46 Fed.Cl. 773, 787 (Fed.Cl.2000) (citing *D. R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 372 F.2d 505, 507–508 (1967); *Housing Corp. of America v. United States,* 199 Ct.Cl. 705, 468 F.2d. 922, 923–924 (1972)); *see also Sangre de Cristo Dev. Co. v. United States,* 932 F.2d 891, 895 (10th Cir.1991) ("[T]he United States is not liable to third parties when it contracts with them on behalf of Indian tribes.") (citing *United States v. Algoma Lumber Co.,* 305 U.S. at 423, 59 S.Ct. 267). *cert. denied,* 503 U.S. 1004, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992); *Warr v. United States,* 46 Fed.Cl. at 348–49 (relying on the *Algoma Lumber Company* and *Sangre de Cristo Development Company* decisions); *Navajo Nation v. United States,* 46 Fed.Cl. 217, 235 (2000) ("When the Secretary reviews and approves mineral leases as part of his statutory responsibilities, he does not become a lessor or a lessee. We believe this to be the general rule, absent specific statutory authority to the contrary."), *rev'd on other grounds,* 263 F.3d 1325 (Fed.Cir.2001), *cert. granted,* —— U.S. ——, 122 S.Ct. 2326, 153 L.Ed.2d 158 (2002).

Plaintiff cites to a decision by the United States District Court of the District of South Dakota, *FGS Constructors, Inc. v. Carlow,* 823 F.Supp. 1508 (D.S.D.1993), *aff'd in part, rev'd in part,* 64 F.3d 1230 (8th Cir.1995), *cert. denied,* 517 U.S. 1134, 116 S.Ct. 1417, 134 L.Ed.2d 542 (1996), to argue that because the BIA exercised general oversight and enforcement authority over different areas of the contract existing between plaintiff and the Tribe, that there was a contractual relationship between plaintiff and the United States. In *FGS,* the BIA provided funding to the Oglala Sioux Tribe for repairs to a dam located on the Reservation. *FGS Constructors, Inc. v. Carlow,* 823 F.Supp. at 1510. The funding in *FGS* was provided pursuant to the Indian Self–Determination and Education Assistance Act (ISDEAA), 25 U.S.C. §§ 450 et seq. (West 1983 & Supp. 1993). *Id.* at 1510–11. "The tribe, acting in conjunction with the government, hired Cooper Consultants, Inc. [CCI] as the project engineer." *Id.* at 1511. The Tribe then selected Carlow Enterprises as the general contractor for the dam repair, and Carlow subcontracted part of the performance to FGS Constructors, the plaintiff in the case. *Id.* Disputes arose during the performance of the contract, and FGS eventually brought claims against the United States, including claims for negligence on the part of CCI, and attempted to impute that alleged negligence to the government. *Id.* at 1511. The government argued that the plaintiff's claims against the government should be dismissed.

The court accepted the plaintiff's unrebutted assertions as true for purposes of the government's motion to dismiss, and ruled that "the Court's jurisdiction under the

FTCA [Federal Tort Claims Act] [extends] to acts of Indian contractors taken in furtherance of contracts under the ISDEAA." *Id.* at 1515 (citing 25 U.S.C. § 450f notes (West Supp.1993), *id.* at 1514). The government's motion to dismiss FGS' claim for lack of subject matter jurisdiction was denied by the District Court. *Id.* at 1515.

On appeal, the Eighth Circuit Court of Appeals noted that:

> The ISDEAA promotes the long-standing federal policy of encouraging Indian self-determination, giving Indian tribes control over the administration of federal programs benefiting Indians. Under a self-determination contract, the federal government supplies funding to a tribal organization, allowing the tribal organization to plan, conduct and administer a program or service that the federal government otherwise would have provided directly. 25 U.S.C. § 450f, b(j).

*FGS Constructors, Inc. v. Carlow,* 64 F.3d at 1234. The Eighth Circuit then addressed the FTCA claim, concluding that CCI was not an Indian contractor for purposes of 25 U.S.C. § 450f and that, therefore, the United States was not liable for the "alleged negligent performance of the self-determination contract by CCI." *Id.* at 1233, 1234.

Whereas the *FGS* court was concerned with negligence under the FTCA, privity of contract is at issue in the present case before this court, and the self-determination contract is the only contract under the facts of this case which the BIA or any government representative has signed. Privity of contract, however, was not addressed in the *FGS* case at either the trial or appellate levels. The Eighth Circuit's conclusions are, nonetheless, instructive:

> The Act specifies that "a contract ... entered into [part A of the ISDEAA] between a tribal organization and the appropriate Secretary for the planning, conduct, and administration of programs or services ... otherwise provided to Indian tribes and their members pursuant to Federal law" is a self-determination contract. 25 U.S.C. § 450b(j). Thus, by definition, the ISDEAA does not contemplate that a pri-

vate party such as CCI can enter into a self-determination contract.

*FGS Constructors, Inc. v. Carlow,* 64 F.3d at 1234 (alterations in original). As noted above by the Eighth Circuit Court of Appeals in *FGS,* by statute, a private contractor such as CCI, or such as plaintiff Earthwalker Engineering in the present case, cannot be a party to a self-determination contract with the government. Therefore, no privity exists between the private contractor and the government under the circumstances of the case before this court.

■ Plaintiff also cites to a short section of the *FGS* case at the District Court level which discusses a 1988 addition to the ISDEAA, codified at 25 U.S.C. § 450m–1(a) (2000). The District Court in *FGS* cited 25 U.S.C. § 450m–1(a), (d) (West Supp.1993), which provides that district courts shall have original jurisdiction and the Court of Federal Claims shall have concurrent jurisdiction over civil actions or claims against the government arising under the ISDEAA. *FGS Constructors, Inc. v. Carlow,* 823 F.Supp. at 1515. The District Court concluded that: "FGS has presented a 'civil action or claim' against the BIA which arose under a contract authorized by the ISDEAA. Therefore, this Court has jurisdiction over FGS's claims against the government under section 450m–1 as well." *Id.* at 1516.

The language of section 450m–1(a) provides concurrent jurisdiction in the Court of Federal Claims "over any civil action or claim against the Secretary for money damages arising under contracts authorized by this subchapter." 25 U.S.C. § 450m–1(a) (2000). The cited subchapter is titled "Indian Self–Determination and Education Assistance." Self-determination contracts are defined in the statute as contracts between the Tribal organization and appropriate Secretary for ISDEAA purposes. 25 U.S.C. § 450b(j). "Mature contracts" are defined in the statute as self-determination contracts lasting more than three years. 25 U.S.C. § 450b(h). Self-determination contracts are addressed in detail at 25 U.S.C. § 450f. Although not the situation presented by the above captioned case, pursuant to 25 U.S.C. § 450f(b)(3): "Whenever the Secretary [of

the Interior] declines to enter into a self-determination contract ... the tribe or tribal organization may ... exercise the option to initiate an action in a Federal district court and proceed directly to such court pursuant to section 450m–1(a) of this title." In Part E of the ISDEAA, titled "Tribal Self–Governance—Indian Health Service," an August 18, 2000 amendment provided that: "For the purposes of section 450m–1 of this title, the term 'contract' shall include compacts and funding agreements entered into under this part." 25 U.S.C. § 458aaa–10.

BIA regulations for the ISDEAA program, contemporaneous with the contracts at issue, define recontracting as "the entering into a contract with a tribal organization which holds a contract for the same program." 25 C.F.R. § 271.2(k) (1992); *see also* 25 C.F.R. § 271.20 (discussing recontracting); 25 C.F.R. Part 271 (Contracts under Indian Self–Determination Act). The contract requirements of the ISDEAA regulations address self-determination contracts. 25 C.F.R. § subpart D (General Contract Requirements). From the statute and the BIA regulations for the ISDEAA program, a distinction emerges between "contracts" made by the BIA with Tribal organizations, and contracts made by the Tribal organizations with private parties. 25 C.F.R. § 271.44(a)-(c).

The language providing for concurrent jurisdiction in the Court of Federal Claims, codified at 25 U.S.C. § 450m–1(a), is from the Indian Self–Determination and Education Assistance Act Amendments of 1988, Public Law 100–472, Title II, § 206(a), Oct. 5, 1988, 102 Stat. 2295. The legislative history accompanying the amendments states that:

> The amendments made by section 110 are necessary to give self-determination contractors viable remedies for compelling BIA and IHS [Indian Health Service] compliance with the Self–Determination Act.
>
> \* \* \* \* \* \*
>
> Not only does existing law make it virtually impossible for self-determination contractors to enforce their rights under the Act, but the Bureau of Indian Affairs has also taken to arguing that such contractors have no legal remedies at all by which to redress the Bureau's failure to fund their contracts with indirect costs at the level mandated by law and by their contract terms.
>
> \* \* \* \* \* \*
>
> Furthermore, any disputes would be resolved by review in the United States District Court or, if claims for money damages and at the election of the tribe, in the U.S. Court of Claims.
>
> \* \* \* \* \* \*
>
> These amendments strengthen the ability of tribes to contract with the Secretary to perform trust-related functions, and to participate with the Secretary in trust responsibility decision-making as equal partners.

S.Rep. No. 100–274, *reprinted in* 1988 U.S.C.C.A.N. 2620, 2656, 2658, 2659 (footnote omitted).

Reviewing the ISDEAA, implementing BIA regulations and the legislative history, the civil actions or claims arising under "contracts authorized by this subchapter," 25 U.S.C. § 450m–1(a), appear to refer to claims arising only under self-determination contracts between Tribal organizations and the appropriate Secretary, and not claims arising from contracts entered into by the Tribe and a private party to which the government is not a party and is not in privity. The Ninth Circuit Court of Appeals, in *Demontiney v. United States,* 255 F.3d at 806–07, concluded that 25 U.S.C. § 450m–1(a) addresses only self-determination contracts between Tribal organizations and the government. "Congress did not intend self-determination contracts to include contracts entered into by private parties." *Id.* at 807; *see also FGS Constructors, Inc. v. Carlow,* 64 F.3d at 1234 (By definition, the "ISDEAA does not contemplate that a private party ... can enter into a self-determination contract.")

Additionally, plaintiff cites *Hatzlachh Supply Co. v. United States,* 444 U.S. 460, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980), for support. However, *Hatzlachh Supply Co.* addresses "whether the United States may be held liable for breach of an implied contract of bailment when goods are lost while held by

the United States Customs Service (USCS) following their seizure for customs violations." *Id.* at 461, 100 S.Ct. 647. The United States Supreme Court held that customs officials may be liable for the negligent loss of goods under certain provisions of the Federal Torts Claims Act. Again, privity of contract was not an issue in *Hatzlachh,* as it is in the present case.

■ Based on the terms of the contract between plaintiff and the Tribe, the only entity which had a contractual relationship with John Demontiney, doing business as Earthwalker Engineering, relating to the Bonneau Dam on the Reservation, was the Tribe. The involvement of the BIA in the present case is not distinguishable from the similar federal government involvement discussed above and determined not to establish privity of contract. The contract, final scope-of-work and the architect-engineering contract were signed only by representatives of the Tribe and the plaintiff, not by BIA or other United States government representatives. *See United States v. Algoma Lumber Co.,* 305 U.S. at 421–22, 59 S.Ct. 267; *Warr v. United States,* 46 Fed.Cl. at 348. The BIA's traditional role of protector and guardian of Native American interests, and involvement with Tribal organizations in self-determination contracts, does not place the BIA in privity of contract with contractors with which Tribal organizations contract.

## CONCLUSION

Because the court has been presented with, and considered, matters outside the pleadings by both parties, and due to the lack of privity of contract between the plaintiff and the government, the court **GRANTS** summary judgment in favor of the defendant. The Clerk's Office shall **DISMISS** plaintiff's complaint, with prejudice.

**IT IS SO ORDERED.**