CITY OF CINCINNATI,
Plaintiff–Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 98–5039.

United States Court of Appeals,
Federal Circuit.

Sept. 1, 1998.

John J. Williams, Assistant City Solicitor, City of Cincinnati, Cincinnati, Ohio, argued for plaintiff-appellant. With him on the brief was Fay D. Dupuis, City Solicitor.

Colleen A. Conry, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for defendant-appellee. On the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Kirk T. Manhardt, Assistant Director, and Miguel A. Serrano, Trial Attorney.

Before NEWMAN, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

■ Among the oldest principles of constitutional law is that a state may not tax the United States. That issue has been settled since 1819, when the Supreme Court held in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579, that the State of Maryland could not tax the Bank of the United States. That principle, which has been extended to municipalities and subdivisions of states, is simple and absolute: A state or local governmental body may not tax a federal entity in the absence of congressional consent. *See United States v. County of Allegheny*, 322 U.S. 174, 177, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). In practice, however, the principle has proved difficult to apply. *See United States v. New Mexico*, 455 U.S. 720, 733–38, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982).

One issue courts have had to decide is whether the assessment in question should be characterized as a tax, and thus impermissible when imposed on a federal entity, or whether the assessment should be considered a fee for services provided to the federal entity, and therefore permissible. *See, e.g., United States v. City of Huntington*, 999 F.2d 71 (4th Cir.1993) (municipal "fire service fee" and "flood protection fee" were taxes that could not be imposed upon federal entities); *United States v. City of Columbia*, 914 F.2d 151 (8th Cir.1990) (surcharge on municipal water and electric utility bills was a fee, not a tax, and therefore could be assessed against federal entities). While that question is often difficult to answer, we do not reach it in this case, because the city's complaint runs aground on a preliminary matter: It fails to establish the elements of an implied contract between the city and the United States and therefore fails to state a claim upon which the Court of Federal Claims may grant relief. For that reason, we affirm the judgment of the trial court dismissing the complaint.

## I

The City of Cincinnati operates a stormwater management system, which is designed to control stormwater runoff within the city. A city ordinance provides for a "storm drainage service charge" to be imposed on property owners within the city in order to pay the expenses of the stormwater management system. The amount of the assessment against each property owner is a function of the size of the property and its "intensity of development." The general goal of the assessment formula is to impose higher assessments on properties that are expected to produce more stormwater runoff, such as commercial or industrial properties, and to impose lower assessments on properties that are expected to produce less stormwater runoff, such as residential or undeveloped properties. Not all of the distinctions in the rates of assessment can be accounted for by the expected amount of stormwater runoff from particular kinds of properties, however. As counsel for the city confirmed at oral argument, some distinctions among the assessment levels are based on a decision that certain kinds of properties, such as churches, should be subject to lower assessments.

The property owner in this case is a federal entity, the National Institute of Occupational Safety and Health (NIOSH), which operates a facility within the City of Cincinnati. The city contends that NIOSH owes more than $60,000 in storm drainage service charges. NIOSH has declined to pay the assessments, contending that the storm drainage service charge amounts to an unconstitutional tax on a federal entity. The city filed suit in the Court of Federal Claims to recover the assessed charges, arguing that the storm drainage charge is not a tax, but a charge for services that the United States, like any other user of city services, is required to pay.

The Court of Federal Claims dismissed the complaint for failure to state a claim upon which relief could be granted. In a thorough opinion, the court noted that the federal government can properly be charged for services that it purchases from local governmental entities, such as water or other utility services. The court held, however, that the storm drainage charge, which was imposed

on all property owners within the city and was not the product of a voluntary purchase decision by the federal government, constitutes a tax, not a fee for services, and therefore could not be exacted from a federal entity such as NIOSH. The city appeals from that decision.

## II

The Court of Federal Claims has jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The trial court understood the city to be basing its invocation of jurisdiction on an implied-in-fact contract between the city and the United States, and the city confirmed at oral argument that it was basing its claim of jurisdiction on that ground. As the Court of Federal Claims explained, the invocation of the implied contract theory is sufficient in this case to set forth a basis for subject-matter jurisdiction, because the city has made a non-frivolous assertion of an implied contract with the United States. *See Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997); *Lewis v. United States*, 70 F.3d 597, 602–04 (Fed.Cir.1995). As the court further explained, however, the fact that subject-matter jurisdiction is properly invoked does not mean that the city has stated a claim upon which relief can be granted. That question turns on whether the city's stormwater drainage charges can be considered the product of an implied-in-fact contract between the city and the United States. If not, the Court of Federal Claims may not grant relief to the city, even if the city might have a right to recover the charges under another theory of liability and in another forum.

■ An implied-in-fact contract is one "founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Baltimore & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923); *see also Hercules, Inc. v. United States*, 516 U.S. 417, 424, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996). Like an express contract, an implied-in-fact contract requires "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990); *see also H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1575 (Fed.Cir.1984); *Russell Corp. v. United States*, 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976). When the United States is a party, a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract. *See City of El Centro*, 922 F.2d at 820. In short, an implied-in-fact contract arises when an express offer and acceptance are missing but the parties' conduct indicates mutual assent. *See Chavez v. United States*, 18 Cl.Ct. 540, 544 (1989). Implied-in-fact contracts, which are within the jurisdiction of the Court of Federal Claims, differ significantly from implied-in-law contracts, which impose duties that are deemed to arise by operation of law and are outside the jurisdiction of the Court of Federal Claims. *See Hercules, Inc.*, 516 U.S. at 423, 116 S.Ct. 981; *Merritt v. United States*, 267 U.S. 338, 340–41, 45 S.Ct. 278, 69 L.Ed. 643 (1925); *Russell Corp.*, 537 F.2d at 482.

■ The relationship between the city and NIOSH with respect to the storm drainage service charge did not result in an implied-in-fact contract. The storm drainage service charge was not imposed as a result of a consensual arrangement between the city and the United States, as would be true in the case of a voluntary purchase of utilities or other services. Instead, the stormwater drainage service charge was an assessment imposed on the United States involuntarily, by virtue of its status as a property owner. While the United States may be said to be a

beneficiary of the storm drainage services provided by the city, it was not offered the opportunity to choose whether to accept those benefits, and it cannot be said to have taken any action (other than not moving out of Cincinnati when the charges were assessed) to indicate its willingness to pay the charges. Under these circumstances, we are unable to discern the basis for an implied-in-fact contract in which the United States has voluntarily undertaken certain obligations that the Court of Federal Claims is empowered to enforce. *See, e.g., Midcoast Aviation, Inc. v. General Elec. Credit Corp.*, 907 F.2d 732, 743 (7th Cir.1990) (in an implied-in-fact contract acceptance "must be voluntary and knowing"); *Alde, S.A. v. United States*, 28 Fed. Cl. 26, 32 (1993) ("compelled acquiescence" does not indicate intent to enter into a contract; rather, "voluntary assent" is necessary). The fact that the United States may benefit from the storm drainage services provided by the city does not create an implied-in-fact contract to pay for those services. *See Trauma Serv. Group*, 104 F.3d at 1327 (noting that the receipt of services might create an implied-in-law contract, but that the Court of Federal Claims is without jurisdiction to entertain such claims). We therefore agree with the Court of Federal Claims that the city's complaint had to be dismissed for failure to state a claim upon which relief could be granted.

We part company with the trial court's analysis in one respect, however. The trial court regarded the question whether there was an implied-in-fact contract between the city and the United States to be essentially the same question as whether the storm drainage service charge was a permissible fee for services or an impermissible tax. We disagree that the two inquiries are necessarily the same. As we have stated above, the involuntary nature of the storm drainage service charge is dispositive of the former inquiry: There can be no implied-in-fact contract without voluntary acceptance of the city's services. The *involuntary nature* of the charge, however, is not dispositive of the latter inquiry. There may be some instances in which a municipal assessment is involuntarily imposed but would nonetheless be considered a permissible fee for services rather than an impermissible tax. Our decision in this case does not answer that question and thus we do not hold that Cincinnati's storm drainage service charge is a tax that cannot constitutionally be imposed on a federal entity. What we do hold is that the complaint, which was based on a theory of implied-in-fact contract, fails to provide any basis for concluding that there was an implied-in-fact contract between the city and the United States. The complaint therefore fails to state a claim upon which the Court of Federal Claims is empowered to grant relief.

*AFFIRMED.*