**US ECOLOGY, INC., Plaintiff–Appellant,**

**and**

**California Department of Health Services, Plaintiff,**

**v.**

**UNITED STATES, Defendant–Appellee.**

No. 00–5062.

United States Court of Appeals, Federal Circuit.

Decided: March 30, 2001.

---

Karl S. Lytz, Latham & Watkins, of San Francisco, CA, argued for plaintiff-appellant. With him on the brief was Laurence H. Levine, of Chicago, IL.

Mark R. Haag, Attorney, Appellate Section, Environment & Natural Resources Division, Department of Justice, of Washington, DC, argued for defendant-appellee.

Laurens H. Silver, California Environmental Law Project, of Mill Valley, CA, for amicus curiae, Los Angeles City Council

Women, et. al., Of counsel on the brief was Stanton J. Price, Law Offices of Stanton J. Price, of Santa Monica, CA.

Before MICHEL, Circuit Judge, PLAGER, Senior Circuit Judge, and LINN, Circuit Judge.

MICHEL, Circuit Judge.

This appeal concerns a claim for damages for the breach of an alleged contract between the United States Department of the Interior ("federal government") and the State of California for the sale of federal land located in California. US Ecology asserts that it is entitled to recover as a third-party beneficiary under the alleged contract. The trial court, however, held on summary judgment that no contract had been formed. The government agrees, and also argues that US Ecology lacks standing to appeal. We do not reach the issues of contract formation and standing to appeal, however, because we hold that US Ecology failed to raise a genuine issue as to whether the federal government intended for any third party—such as US Ecology—to have rights under the alleged contract, and therefore we must affirm.

## I. BACKGROUND

In 1985, the California Department of Health Services ("CDHS") began planning for the development of a low-level radioactive waste ("LLRW") disposal facility in California. California law required that the facility be built upon land owned by the State. US Ecology has constructed and operated such facilities throughout the United States. LLRW includes waste that has been exposed to nuclear radiation, such as certain types of medical and industrial waste. CDHS is the agency of the State of California responsible under California law for managing the disposal of LLRW.[1] Under California law, the opera-

---

1. In 1987, the States of California, Arizona,     North Dakota and South Dakota entered into

tor of the planned LLRW facility must first be licensed by CDHS. *See* Cal. Health & Safety Code §§ 25810, 25812 (1985). Once CDHS has determined that a license applicant will "likely" satisfy the eligibility requirements for a license it designates that applicant as the "license-designee." Cal. Health & Safety Code § 25812.5(a) (1985). In 1985, CDHS identified US Ecology as its "license-designee" for the LLRW facility. CDHS did not actually grant the license to US Ecology until September 1993, after the alleged formation and breach of the contract at issue.

In January 1993, the federal government and the State of California agreed to terms for the sale of a parcel of 1,000 acres of federal land in the Ward Valley region of California (the "Site"), and US Ecology paid the purchase price of $500,000 to the federal government on behalf of the State of California. On January 7, 1993, Secretary of the Interior Manuel Lujan issued an internal memorandum to document his decision to sell the Site to California. On January 19, 1993, Secretary Lujan issued a statutorily-required Record of Decision ("ROD") informing the public that the federal government had decided to sell the Site to California. The issuance of an ROD was the penultimate step in the sale process, the final step—which never occurred—being execution and issuance of the land patent, which would have passed title to the Site to California. Governor Bruce Babbitt then succeeded Secretary Lujan at the Department of the Interior. On February 18, 1993, Secretary Babbitt rescinded the January 19 ROD. The federal government refunded US Ecology's payment, and refused further requests by the State of California to transfer ownership of the Site.

On January 30, 1997, US Ecology brought suit against the federal government in the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a) (1994). US Ecology subsequently joined CDHS as a third-party plaintiff. US Ecology sought damages as a third-party beneficiary under a contract allegedly formed in January 1993 between the federal government and CDHS for the sale of the Site. The contract, it argued, was manifest from Secretary Lujan's January 7 memorandum, the ROD, and the payment. US Ecology's claimed damages included $73 million in costs incurred in preparation for the sale-primarily for environmental studies required by the federal government. US Ecology also claimed lost profits, *i.e.,* profits it would have earned if the land had been transferred and US Ecology had been licensed and had built and operated an LLRW disposal facility.

The Court of Federal Claims granted summary judgment to the federal government, holding that its contracting authority had been divested by the entry of a temporary restraining order ("TRO") on January 8, 1993, in a separate action in district court brought by environmentalists under the Endangered Species Act to prevent the sale. *US Ecology, Inc. v. United States,* No. 97–65L, slip op. at 7 (Fed.Cl. March 27, 2000).

US Ecology appeals the judgment, although CDHS does not. We have exclusive jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(3) (1994). As noted, the trial court's subject-matter jurisdiction was grounded in the Tucker Act. We heard oral argument on February 6, 2001. Because US Ecology failed to submit evidence sufficient to raise a genuine issue as

the Southwestern Low–Level Radioactive Waste Disposal Compact, under which California was to establish a regional disposal site for LLRW for use by all states in the compact, pursuant to the Low Level Radioactive Waste Policy Act Amendments of 1985, 42 U.S.C. § 2021(b)-(j) (1994).

to its alleged rights as a third-party beneficiary under the alleged contract, the United States is entitled to judgment as a matter of law and the summary judgment in favor of the federal government is affirmed.

## II. *ANALYSIS*

We review the grant of summary judgment by the Court of Federal Claims as we do any grant of summary judgment, *de novo. Costain Coal, Inc. v. United States*, 126 F.3d 1437, 1440 (Fed.Cir.1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, summary judgment is proper only when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The federal government asserts that US Ecology lacks standing to appeal because, even assuming that there is a contract, US Ecology is not a third-party beneficiary. We agree that the issues of standing and third-party beneficiary status are intertwined. We hold that US Ecology has no rights under the alleged contract. Therefore, the summary judgment must be affirmed, even assuming standing is otherwise established.

### Third–Party Beneficiary Rights

US Ecology can prevail on appeal only if it shows that there is in dispute a genuine issue of material fact as to its status as a third-party beneficiary with rights under the alleged land-sale contract. US Ecology argues that the alleged land-sale contract between California and the federal government created enforceable rights in US Ecology as a third-party beneficiary.

As evidence that the federal government intended for it to benefit from the alleged contract, US Ecology relies upon the cooperative course of dealings amongst itself, California, and the federal government that resulted in the alleged contract. It is undisputed that US Ecology worked cooperatively with the federal government and CDHS to perform the expensive environmental testing of the Site required under federal law. However, neither federal law nor the Department of the Interior required that the tests be performed and paid for by US Ecology. CDHS and the plaintiff-appellant chose that arrangement independently. US Ecology also points to the undisputed facts that the federal government was aware that US Ecology was CDHS's license-designee and that US Ecology paid the $500,000 purchase price for the Site on behalf of California. Once again, the federal government did not require that US Ecology pay the purchase price.

US Ecology also relies upon a memorandum of agreement between the federal government and US Ecology, dated April 20, 1988, in which US Ecology agreed to reimburse the federal government for its costs associated with the proposed sale of the Site. This agreement states that it was made pursuant to 43 U.S.C. § 1734, "which allows [the federal government] to charge applicants for the reasonable costs associated with the processing of a federal land transaction." US Ecology asserts that "applicants" refers to US Ecology and that this is evidence that the federal government deemed it to be the real party in interest, and therefore an intended third-party beneficiary. This assertion, however, is contradicted by the agreement itself, which does not refer to US Ecology as the "applicant," but instead specifically states that the California State Lands Commission is the "applicant" for the land sale.

**1356**

US Ecology also relies upon Secretary Lujan's internal memorandum of January 7, 1993, the ROD, and the draft land patent for the Site as evidence that the sole purpose of the land sale was to allow US Ecology to develop the planned LLRW disposal facility on the Site. US Ecology also relies upon an affidavit by Secretary Lujan in which he states that "[g]iven the public importance of the Ward Valley project and the fact that development of such a facility was required by federal laws . . . Interior had decided to support California's efforts by conveying suitable land for the project." In his affidavit, however, Secretary Lujan refers to US Ecology only as CDHS's "contractor," and none of his statements indicates that the federal government intended either for US Ecology to benefit from the contract, or for the alleged contract to confer rights upon any third party.

US Ecology argues that this evidence at least raises a genuine issue of fact as to whether the federal government intended to confer rights upon it under the alleged contract.

**A. *Did the Federal Government Intend for a Third Party to Have Rights Under the Alleged Contract?***

■ In order to create rights in a third party, "the contract must 'reflect[ ] the express or implied intention of the parties to benefit the third party.'" *Montana v. United States,* 124 F.3d 1269, 1273 (Fed. Cir.1997); *see also* Restatement (Second) Contracts § 302(1) ("Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is *appropriate to effectuate the intention of the parties.*") (emphasis added). "One way to ascertain such intent is to ask whether the beneficiary would be reasonable in relying on the promise as manifesting an intention to *confer a right* on him." *Montana,* 124 F.3d at

1273 (emphasis added) (citing Restatement (Second) Contracts § 302 cmt. d ("[I]f the beneficiary would be reasonable in relying on the promise as manifesting an intention to confer a right on him, he is an intended beneficiary.")).

■ There is no indication in any of the evidence presented by US Ecology that Secretary Lujan intended for the alleged contract to "confer a right" on any third party. *Montana,* 124 F.3d at 1273. While the federal government did cooperate with a third party during the course of its dealings with California, it did so only because that third party—US Ecology—was assisting California in its effort to purchase the Site.

Secretary Lujan's internal memorandum of January 7, 1993, the ROD, and his affidavit provide unambiguous and consistent evidence of his intent in entering into the alleged contract. In each document he stated that the federal government's purpose and intent in contracting were to assist California in complying with federal laws requiring the development of an LLRW disposal facility, such as the one CDHS had planned for the Site. It is undisputed that the evidence contains no statement by the federal government that it intended for the alleged contract to benefit any third party.

While federal law required California to develop an LLRW disposal facility somewhere within the State, it did not require California to do so on the Site. US Ecology has provided no evidence to indicate that CDHS was bound to develop an LLRW disposal facility on this particular site even if the government had transferred it to California.

By January 7, 1993, CDHS had informed the federal government that it hoped to license US Ecology, but that it had not yet ruled on US Ecology's license application. It is undisputed that after

discussing the licensing issue with California Governor Pete Wilson, Secretary Lujan insisted upon, and California agreed to, the inclusion of language in the proposed land patent for the Site providing that ownership of the Site would revert to the federal government if CDHS had not licensed *any* entity to operate the planned LLRW facility within ten years. The January 19, 1993 ROD issued by Secretary Lujan also set forth this condition subsequent to the sale. At the times of formation and breach of the alleged contract, therefore, it was uncertain not only whether CDHS would eventually grant US Ecology a license to operate an LLRW disposal facility on the Site, but whether it would license anyone to operate such a facility on the Site.

If the federal government had intended for the alleged contract to confer a right upon a third party, it could have expressly provided for such a right in the contract documents. It did not do so. The government's acceptance of payment, at the request and designation of CDHS, from a third party that may have benefited from the contract *if* CDHS had subsequently issued it a license does not indicate any intent by the government to confer a right upon that third party.

US Ecology relies exclusively upon *Montana* in support of its argument that it is a third-party beneficiary because the federal government entered into the alleged contract with the knowledge that US Ecology was CDHS's license-designee and had assisted CDHS in preparing for the sale. *Montana*, however, compels the opposite conclusion, because US Ecology has failed to provide evidence sufficient to raise a triable issue as to whether the federal government intended for the alleged contract to confer a right upon any third party. The federal government's insistence upon a reversionary right to the Site that would vest if CDHS did not license anyone to operate an LLRW facility on the Site is undisputed evidence that the federal government was uncertain whether CDHS would proceed with development of an LLRW disposal facility on the Site. Given this, combined with the absence of any evidence of an intent by the federal government to benefit any third party, it cannot be claimed that the federal government intended for the alleged contract to confer a right upon a third party. *Montana*, 124 F.3d at 1273; *see also* 4 A. Corbin, *Corbin on Contracts* § 779D at 43–46 (1951) (a third party has no rights under a contract that would not necessarily benefit that party, as where benefit to the third party depends upon an "intervening voluntary action" of the promisee).

**B.** ***Even if the Federal Government had Intended to Confer a Right on a Third Party, was US Ecology Qualified as such a Third Party?***

**1.** *US Ecology was Not Licensed Before the Alleged Breach*

█ As of January 1993, US Ecology was not yet licensed by CDHS to operate the planned LLRW disposal facility. It was only in September 1993, after the formation and breach of the alleged land-sale contract, that CDHS licensed US Ecology. It is undisputed that, under California law, US Ecology could not operate the LLRW disposal facility unless and until it had been so licensed.

In *Montana*, the State of Montana brought suit against the United States, claiming that it held a lien against an asset that had been awarded to the United States as a creditor in an unrelated bankruptcy proceeding. *Montana*, 124 F.3d at 1272. The award had been made pursuant to a compromise settlement agreement in which the United States acknowledged that its claim to the asset was subject to any third-party claims of superior or equal

priority. *Id.* We affirmed the dismissal of Montana's claim because it had not shown that it was intended as a third-party beneficiary of the settlement agreement. The key to our holding was that, even though the government had intended for the agreement to confer rights upon certain third parties, Montana did not qualify as such a third party. *Id.* at 1276. Under the relevant statutory and regulatory law, which provided a "comprehensive scheme for federal lien priority," it was clear that Montana's claim was subordinate to that of the United States. *Id.* ("Because the rule of law mandates that [the United States'] lien have priority over Montana's lien, Montana is not adjudged to be a third-party beneficiary.").

Thus, even assuming that the federal government had intended to confer a right under the alleged contract on the party licensed by CDHS to benefit from the alleged contract, US Ecology was not licensed prior to the government's alleged breach, and therefore cannot qualify as a third-party beneficiary. *Id.*

### 2. *California Was Not Obligated to License US Ecology*

US Ecology would have been qualified to benefit from the alleged contract only if and when CDHS decided to approve its application for a facility license—which it could do only after determining that the license would be "consistent with public health and safety." Cal. Health & Safety Code § 25812(a)(2) (1985). US Ecology has failed to provide any evidence that CDHS was obligated to approve its license application. Furthermore, it is undisputed that the federal government did not seek to limit the ability of CDHS to license an applicant other than US Ecology.

The January 19, 1993 ROD states only that US Ecology is CDHS's license-designee. The draft land patent does not refer to US Ecology, nor does Secretary Lujan's January 7 internal memorandum. Thus, the evidence presented by US Ecology provides no indication that, prior to the breach of the alleged contract, US Ecology was certain to be licensed by CDHS in the future, much less that California and the United States intended to grant it rights under the alleged contract. The United States Court of Appeals for the District of Columbia Circuit also concluded that US Ecology had failed to prove that it had a right to develop the planned LLRW disposal facility. *See U.S. Ecology, Inc. v. United States Dep't of the Interior*, 231 F.3d 20, 25 (D.C.Cir.2000). In that case, the court dismissed US Ecology's appeal for lack of standing because it had failed to show that the harm resulting from the government's alleged breach of the same land-sale contract at issue in the instant appeal would be redressable by the relief US Ecology sought—a writ of mandamus compelling the government to transfer ownership of the site to the State of California. *Id.* ("Indeed, the record before this court does not even support a finding that US Ecology would be entitled to develop the facility were California ultimately to pursue the Ward Valley Site."). Thus, even assuming that the federal government had intended to benefit a third-party developer that CDHS was obligated to license, US Ecology has failed to raise a triable issue as to whether it was certain to be licensed by CDHS.

### CONCLUSION

Because US Ecology has failed to raise a triable issue as to its alleged rights as a third-party beneficiary under the alleged contract, and therefore the government is entitled to judgment as a matter of law,

the summary judgment to the government is affirmed.

*AFFIRMED.*