**RIVIERA DRILLING AND EXPLORATION COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–1416 L.

United States Court of Federal Claims.

July 28, 2004.

William E. Hughes, III, Milwaukee, WI, for plaintiff.

Sydney F. Cook, with whom was Thomas L. Sansonetti, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant. Martin Hockey, National Courts Section, Civil Division, United States Department of Justice, Washington, DC, and Kenneth P. Pitt, Office of the General Counsel–Mountain Division, United States Forest Service, Golden, CO, of counsel.

## OPINION

HEWITT, Judge.

Before the court is Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Def.'s Mot. or defendant's motion), which has been fully briefed.[1] Plaintiff Riviera Drilling and Exploration Company, Inc. (Riviera) "has operated and owned several natural gas wells in and around the Gunnison National Forest [ (the Forest) ], Gunnison County, Colorado, for more than twenty years." Compl. ¶ 5.[2] Plaintiff "accessed these natural gas wells over and across Forest Highway 265 and Forest Road 844." *Id.* ¶ 7. Plaintiff's complaint[3] alleges that the United States Forest Service (USFS) improperly required that plaintiff post a surety bond in the amount of $139,500 for road repair of these roads. *Id.* ¶¶ 12–20. Defendant is also alleged to have "forced [plaintiff] to shut-in its natural gas wells," *id.* ¶ 22, and to have "financially injured [plaintiff] as a result of the USFS and Department of Agri-

---

1. Other briefings include Plaintiff's Response to Defendant's Motion to Dismiss (Pl.'s Resp.) and Defendant's Reply Memorandum in Support of Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Def.'s Reply).

2. Facts cited to the filings of only one party appear not to be in dispute, at least for the purposes of deciding defendant's motion. *See* Def.'s Mot. at 1 ("The following facts are derived from plaintiff's Amended Complaint and are not disputed for purposes of this motion."); *id.* at 4 ("For purposes of this motion only, the facts are not in dispute. Rather, the motion is based on the facts as alleged in the Amended Complaint.").

3. All citations to plaintiff's complaint in this opinion are to the Amended Complaint filed January 5, 2004.

culture[']s shut-in requests and demands for excessive bond monies," *id.* ¶ 24.

Defendant's motion, filed under Rule 12(b) of the Rules of the United States Court of Federal Claims (RCFC), Def.'s Mot. at 1, asserts that all of plaintiff's claims fail for lack of jurisdiction, for failure to state a claim upon which relief can be granted or for lack of ripeness, Def.'s Mot. at 4–10. For the following reasons, defendant's motion is GRANTED.

## I. Background

Plaintiff's complaint concerns access to certain natural gas wells in the Ragged Mountain Unit Area of the Gunnison National Forest. Compl. ¶¶ 5, 28. "Forest Highway 265 and Forest Road 844 are the only viable means of accessing [plaintiff's] natural gas well[s]." *Id.* ¶ 8. On December 31, 2002, plaintiff's Road Use Permit (RUP) to use these roads was due to expire. *Id.* ¶ 10. The Forest Service sent notice to plaintiff of the imminent expiration of its RUP, included a form for a new RUP and required the posting of a surety bond of $135,900 for road repair. *Id.* ¶¶ 10–13. Plaintiff objected to the bond requirement. *Id.* ¶¶ 14, 17. Plaintiff was denied access to the roads for failure to obtain a new RUP. *Id.* ¶¶ 16, 17, 20; Def.'s Mot. at 2. Plaintiff was also ordered to shut-in its natural gas wells. Compl. ¶¶ 16, 21. As a consequence, plaintiff claims financial losses due to the interruption in gas production. *Id.* ¶¶ 22, 24.

On March 25, 2003, plaintiff filed a complaint against the United States [4] in the United States District Court for the District of Colorado requesting injunctive and declara-

tive relief to remedy its blocked access and halted gas production. Def.'s Mot. at 2 n.1, Ex. 2 (copy of complaint in docket no. 03–RB–0504) at 1, 4, 10. "Plaintiff received a temporary RUP on April 1, 2003." *Id.* at 2. Plaintiff voluntarily dismissed its complaint in the District of Colorado on May 6, 2003. *Id.* at 2 n. 1.

On June 6, 2003, plaintiff first filed its complaint in this court. On June 26, 2003, plaintiff received a RUP which has an expiration date of December 31, 2007. *Id.* at 2, Ex. 1 (new RUP) at 1, 4. Plaintiff amended its complaint on January 5, 2004. Plaintiff's complaint asserts two counts of breach of contract, one based on "actions of Defendant[ ] ... [that] are arbitrary and capricious, constitute an abuse of discretion and are otherwise not in accordance with the Mineral Leasing Act and Leases in effect," Compl. ¶ 48, and the other based on "actions of Defendant[ ] ... in excess of [its] statutory authority, specifically under 16 U[.]S[.]C[.] § 3170 and 16 U[.]S[.]C[.] § 3210(a) and [that] are otherwise not in accordance with the Minerals Leasing Act and the Leases in effect," *id.* ¶ 52. Plaintiff also asserts a takings claim.[5] *Id.* ¶ 50. Plaintiff requests that the court provide declaratory and injunctive relief pertaining to its access to its natural gas wells, as well as an award of $350,000 in damages, and other fees and costs. *Id.* ¶ 53.

## II. Discussion

### A. Standard of Review

#### 1. RCFC 12(b)(1) and Jurisdiction

When asserting jurisdiction, plaintiff is entitled to rely on the allegations in the com-

---

**4.** Defendants included the USFS, the Secretary of the United States Department of Agriculture, the USFS chief, and a regional forester of the USFS.

**5.** Plaintiff's complaint in the United States District Court for the District of Colorado (Colorado Complaint) alleged the same facts as here, and presented claims of violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2) (2000), and the Fifth Amendment's guarantee of substantive due process, U.S. Const. amend. V. *See* Def.'s Mot. Ex. 2 (Colorado Complaint) ¶¶ 47–54. Plaintiff's statement of a takings claim here is almost identical to its due process claim in the Colorado Complaint, except for a substitution of "Plaintiff's Fifth Amendment right to be

free from uncompensated takings" for "Plaintiff's Fifth Amendment right to substantive due process." *Compare* Compl. ¶ 50 ("The actions of Defendants restricting the access of Riviera Drilling to those wells operated by it are arbitrary and capricious and constitute an abuse of discretion. This arbitrary and capricious determination violates Plaintiff's Fifth Amendment right to be free from uncompensated takings.") *with* Colorado Complaint ¶ 52 ("The actions of Defendants restricting the access of Riviera Drilling to those wells operated by it are arbitrary and capricious [and] constitute an abuse of discretion. This arbitrary and capricious determination violates Plaintiff's Fifth Amendment right to substantive due process.").

plaint, which are favorably construed by the court. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("[I]t is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). However, "[f]act-finding is proper when considering a motion to dismiss where the jurisdictional facts in the complaint ... are challenged." *Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999). "If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the ... court may consider relevant evidence in order to resolve the factual dispute." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988).

"Because the motion is brought pursuant to [the predecessor rule to RCFC 12(b)(1)] and raises jurisdictional issues, the filing of materials outside the pleadings does not call for consideration of the motion as one for summary judgment." *Al Johnson Constr. Co. v. United States*, 19 Cl.Ct. 732, 733 (1990). The court may review the record and resolve disputed facts. *Id.* ("While the unchallenged allegations of the complaint are taken as true for purposes of ruling on the motion, the court may inquire, by affidavits or otherwise, into facts necessary to support jurisdiction, and may resolve disputed facts." (citation omitted)). Plaintiff must adduce "relevant, competent proof to establish jurisdiction." *Puerto Rico v. United States*, 44 Fed.Cl. 618, 621 (1999) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)). Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds*, 846 F.2d at 748.

This court has jurisdiction under the Tucker Act "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). In contract claims the plaintiff must allege an actual contract between the plaintiff and the federal government. *See Ralston Steel Corp. v. United States*, 169 Ct.Cl. 119, 340 F.2d 663, 668 (1965) (stating that when "factual allegations [in the complaint] would arguably show an actual contract between the plaintiff (or the agents) and defendant[,] the court therefore has jurisdiction to decide the issue"); *see also Adarbe v. United States*, 58 Fed.Cl. 707, 714 (2003) ("The general rule is that so long as the plaintiffs have made a non-frivolous claim that they are 'entitled to money from the United States because a statute or regulation grants [them] that right,' or because they have a contract right, this court has jurisdiction to settle the dispute." (citations and quotation omitted)).

### 2. RCFC 12(b)(6) and Claims Upon Which Relief May Be Granted

"In evaluating [a Rule 12(b)(6)] motion, the court must accept all well-pled factual allegations as true and draw all reasonable inferences in the plaintiff[']s favor." *Ainslie v. United States*, 355 F.3d 1371, 1373 (Fed.Cir.2004). "Dismissal for failure to state a claim under Rule 12(b)(6) is proper only when a plaintiff 'can prove no set of facts in support of his claim which would entitle him to relief.'" *Leider v. United States*, 301 F.3d 1290, 1295 (Fed.Cir.2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), *cert. denied*, 538 U.S. 978, 123 S.Ct. 1786, 155 L.Ed.2d 666 (2003). If "matters outside the pleading are presented to and not excluded by the court, the [RCFC 12(b)(6)] motion shall be treated as one for summary judgment." RCFC 12(b).

### 3. RCFC 56 and Summary Judgment

Summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting the almost identical language of Rule 56(c) of

the Federal Rules of Civil Procedure). "[A]ll evidence must be construed in the light most favorable to the party opposing summary judgment." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 601, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987). And, "[a] nonmoving party's failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law." *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1202 (Fed.Cir.1994).

### B. Analysis

#### 1. Jurisdiction

■ Defendant moves to dismiss plaintiff's contract claims pursuant to RCFC 12(b)(1), arguing that Riviera is not in privity with the United States. Def.'s Mot. at 6–7. For this court to entertain a contract claim, there must generally[6] be privity of contract between the plaintiff and the United States. *See Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed.Cir.1998) (citing *Erickson Air Crane Co. v. United States*, 731 F.2d 810, 813 (Fed.Cir.1984) for the proposition that "there must be privity of contract between the plaintiff and the United States"). The only reference to a specific[7] contract with the government in Riviera's complaint is to "COC–13600 [an oil and gas lease], on file with the United States BLM and operated by Riviera Drilling." Compl. ¶ 26. Plaintiff appears to imply that this lease is "between Riviera Drilling and the United States Government." *See id.* ¶ 27 ("The clear language of this lease [COC–13600], along with all other leases currently in effect between Riviera Drilling and the United States Government, grants Riviera Drilling the right to construct and maintain roads, and the right to access the wells and leases."). Plaintiff later cites to two paragraphs of its complaint to support its allegation of privity of contract with the United States, Pl.'s Resp. at 7, but these paragraphs are not persuasive. *See* Compl. ¶ 29 (stating that "Riviera Drilling is the owner of certain lease rights in the Gunnison National Forest"), ¶ 41 (stating that an attachment to an unspecified lease has a provision which states that " 'the Forest Service is agreeable to the reduction of lease or operator bonds' ").

Defendant filed a copy of COC–13600, Def.'s Mot. at 5 n.3, titled "Offer to Lease and Lease for Oil and Gas," dated 1971, *id.* Ex. 4. The lessee noted on the lease is B.H. Wierick of Littleton, Colorado. *Id.* Defendant also filed an affidavit from United

---

**6.** "To avoid the privity requirement and demonstrate jurisdiction in this Court, a claimant may assert the status of a third-party beneficiary." *Maniere v. United States*, 31 Fed.Cl. 410, 417 (1994) (citing *Blaze Constr. v. United States*, 27 Fed.Cl. 646, 651 (1993)). Plaintiff here has not asserted that it is a third-party beneficiary to a contract with the United States, and thus is not entitled to this exception to the privity requirement. Even if plaintiff had asserted third-party beneficiary status, it has not alleged facts which would support jurisdiction under this exception. *See F.D.I.C. v. United States*, 342 F.3d 1313, 1319 (Fed.Cir.2003) (" 'In order to create rights in a third party, the contract must reflect the express or implied intention of the parties to benefit the third party.' " (quoting *US Ecology, Inc. v. United States*, 245 F.3d 1352, 1356 (Fed.Cir.2001)) (internal quotations and citations omitted in original)). Plaintiff has alleged no facts from which it might be inferred that Riviera could have reasonably relied upon an oil and gas lease with the United States, to which Riviera was not a party, as manifesting an intent that Riviera could enforce the provisions of that lease. *See U.S. Ecology*, 245 F.3d at 1356 (" 'One way to ascertain such intent is to ask whether the [alleged third-party] beneficiary would be reasonable in relying on the [contract's] promise as manifesting an intention to confer a right on him.' ") (quoting *Montana v. United States*, 124 F.3d 1269, 1273 (Fed.Cir.1997) and citing the Restatement (Second) Contracts § 302 cmt. d).

**7.** Plaintiff refers to COC–13600 as "an example" and also mentions "all other leases currently in effect," without identifying these leases. Compl. ¶¶ 26–27.

States Department of the Interior, Bureau of Land Management Petroleum Engineer Richard J. Ryan which asserts that he was unable to find any documentation for leases for oil and gas owned by Riviera in the Ragged Mountain Unit. *Id.* Ex. 5 ¶¶ 4–6. Defendant filed another affidavit from United States Department of the Interior, Bureau of Land Management Adjudicator Kathleen L. Toth which asserts that none of the committed oil and gas leases in the Ragged Mountain Unit had record title ownership by Riviera. *See* Def.'s Reply Ex. 1 ¶ 4. Plaintiff has filed no affidavits or copies of oil and gas leases to support its alleged privity of contract with the United States, despite the challenge to these jurisdictional facts by defendant.

Plaintiff cites, instead, to an administrative decision by the Interior Board of Land Appeals of the United States Department of the Interior, *Holcomb Oil and Gas, Inc. and Maralex Res., Inc.,* IBLA 98–397, 98–402, 149 IBLA 226, 1999 IBLA LEXIS 98 (June 21, 1999) (*Holcomb*). Pl.'s Resp. at 7. The *Holcomb* decision does mention COC–13600. *See* 149 IBLA at 227 n.1 (stating that some of the federal land in the Ragged Mountain Unit is in lease COC–13600). The *Holcomb* decision also characterizes Riviera's status as the "Unit Operator" in the Ragged Mountain Unit, *id.* at 233, and cites records that listed Riviera's "working interest acreage" in the Ragged Mountain Unit in 1998 as approximately 1053 acres. *Id.* at 231. But nowhere in the *Holcomb* decision can one find any evidence that Riviera is in privity of contract with the United States, either through an oil and gas lease or otherwise.[8]

Because plaintiff has not shown by a preponderance of the evidence that it is in privity of contract with the United States, this court might well decide that it is without jurisdiction to consider plaintiff's contract claims. However, because authority is divided on the appropriate motion, RCFC 12(b)(1) or RCFC 12(b)(6), pursuant to which the court may dismiss contract claims for lack of privity, the court will now consider plaintiff's contract claims under RCFC 12(b)(6). *Compare AG Route Seven P'ship v. United States,* 57 Fed.Cl. 521, 526 (2003) (stating that "[t]here is binding authority from the Federal Circuit to support the [opposing] views [that privity of contract is jurisdictional or goes to the merits]") *with Demontiney v. United States,* 54 Fed.Cl. 780, 783 (2002) (stating that "[a]lthough defendant argues for dismissal based on subject matter jurisdiction, RCFC 12(b)(1), the proper basis to argue lack of privity is RCFC 12(b)(6), for failure to state a claim upon which relief can be granted") *and Globex Corp. v. United States,* 54 Fed.Cl. 343, 347 (2002) (stating that "[a] finding of privity between the plaintiff and the Government is a jurisdictional prerequisite"). The better rule appears to be that when this court has subject matter jurisdiction over the type of non-frivolous claim asserted, the court should take jurisdiction, even if the court's inquiry may eventually prove that the claim asserted fails, on the specific facts presented, to be within this court's jurisdiction. *See Nippon Steel Corp. v. United States,* 219 F.3d 1348, 1353 (Fed. Cir.2000) (stating that when "the jurisdictional issue and the merits are inextricably intertwined, and the former cannot be resolved without considering and deciding (at least in part) the latter," the court may "bypass[ ] the jurisdictional question and decid[e] the merits"); *Ransom v. United States,* 17 Cl.Ct. 263, 267 (1989) ("Where, as here, the jurisdictional facts alleged are closely intertwined with the merits, the preferred practice is to assume subject matter jurisdiction exists and address the merits."); *see also Palmer v. United States,* 168 F.3d 1310, 1313 (Fed.Cir. 1999) (approving of the distinction between a "general power to adjudicate in specific areas

---

8. Defendant points out that a "working interest" is defined as "[a]n interest held in [deposits of oil and gas] or in lands containing the same by virtue of a lease, operating agreement, fee title, or otherwise, under which, except as otherwise provided in the agreement, the owner of such interest is vested with the right to explore for, develop, and produce such substances." Def.'s Reply at 3 (quoting 43 C.F.R. § 3180.0–5 (2003)).

The evidence that Riviera had working interests in the Ragged Mountain Unit does not necessarily mean that Riviera had a contract with the United States-such rights could be obtained from a third party such as the lessee of record. *See id.* (stating that "[p]laintiff may have acquired its interest through an agreement with a third party").

of substantive law [i.e., subject matter jurisdiction]" and "the question of whether in a specific case a court is able to exercise its general power with regard to the facts peculiar to a specific claim [i.e., the question of whether the claim is one upon which relief may be granted]").[9] Of course, privity of contract must again be considered as the court tests the merits of plaintiff's contract claims under RCFC 12(b)(6). *See Erickson Air Crane*, 731 F.2d at 813 ("The government consents to be sued only by those with whom it has privity of contract . . . ."); *see also City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998) (stating that "the fact that subject-matter jurisdiction is properly invoked does not mean that the [plaintiff] has stated a claim upon which relief can be granted").

### 2. RCFC 12(b)(6) Motion Treated as a Motion for Summary Judgment

#### a. Contract Claims

Defendant also challenges plaintiff's contract claims under RCFC 12(b)(6). Def.'s Mot. at 4–5. Because defendant has filed materials beyond the pleadings and these have been considered by the court, defendant's motion must be treated as one for summary judgment. RCFC 12(b). Defendant, in addition to its persuasive arguments that plaintiff is not in privity with the United States, argues that plaintiff has "not allege[d] either an express or an implied contract, nor does the Amended Complaint allege whether there was an offer, an acceptance or consideration given." Def.'s Mot. at 5 (footnote omitted). Defendant also argues that plaintiff has "not set forth whether a government representative entered into or ratified the agreement or whether the representative had actual authority to bind the United States." *Id.*

The legal elements of a binding contract with the government are: "(1) mutuality of intent to contract; (2) consideration; . . . (3) lack of ambiguity in offer and acceptance, . . . [and (4)] the government representative 'whose conduct is relied upon must have actual authority to bind the government in contract.'" *Lewis v. United States*, 70 F.3d 597, 600 (Fed.Cir.1995) (citations and quotations omitted). Failure to allege the elements of a contract with the United States renders the complaint vulnerable to a RCFC 12(b)(6) motion. *See Sartori v. United States*, 58 Fed.Cl. 358, 362 (2003) (stating that "failure to allege actual authority in the case at bar is fatal to [the plaintiffs'] claim"). Here, plaintiff has cited only one specific lease, COC–13600. Plaintiff argues that COC–13600, and the other unspecified leases, "clearly contain[ ] all the elements of a binding contract, including the signature of the authorized representative of the United States." Pl.'s Resp. at 6.

Plaintiff's reliance on COC–13600 is misplaced. Riviera is not a party to this lease. *See* Def.'s Mot. Ex. 4. The United States has submitted two affidavits which assert that Riviera is party to no oil and gas leases with the United States in the Ragged Mountain Unit. *See* Def.'s Mot. Ex. 5; Def.'s Reply Ex. 1. Plaintiff has not alleged an implied-in-fact contract with the United States. Because plaintiff has submitted no evidence of a binding contract with the United States, plaintiff has not met its burden to show that a genuine issue of material fact exists. *See Sweats Fashions*, 833 F.2d at 1562 (stating the rule that the burden shifts to the non-moving party on summary judgment once movant demonstrates that no genuine issue of material fact exists). And, plaintiff has failed to provide any evidence of privity of contract, an element necessary to its claim. *See Dairyland Power*, 16 F.3d at

---

9. The court notes that if, upon review, the correct procedure is determined to be the dismissal of the contract claims of a plaintiff who has not shown privity of contract with the United States, plaintiff here had full opportunity to respond to the jurisdictional challenge by defendant and did not meet the required burden for proving jurisdictional facts establishing privity of contract. The court is simply reluctant to rule plaintiff's allegation of contract rights as clearly outside

this court's jurisdiction when authority for such a dismissal is so unsettled. Even a non-frivolous allegation of an implied-in-fact contract with the United States, a theory plaintiff has not alleged here, is sufficient to establish jurisdiction in this court. *See, e.g., City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998); *Trauma Serv. Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997); *Lewis v. United States*, 70 F.3d 597, 602–04 (Fed.Cir.1995).

1202 (stating that "failure of proof concerning the existence of an element essential to its case on which the nonmoving party will bear the burden of proof at trial necessarily renders all other facts immaterial and entitles the moving party to summary judgment as a matter of law"). Defendant is entitled to summary judgment on plaintiff's contract claims.

### b. Takings Claim

Defendant has moved that plaintiff's takings claim should be dismissed as a matter of law pursuant to RCFC 12(b)(6). *See* Def.'s Mot. at 8 (stating that "plaintiff's regulatory taking claim should be dismissed as a matter of law because it is not ripe for review"), 10 (stating that "plaintiff's taking claim should be dismissed for failure to state a claim for relief pursuant to Rule 12(b)(6)"). Because defendant has filed materials beyond the pleadings that have been considered by the court, defendant's motion to dismiss plaintiff's taking claim will be treated as a motion for summary judgment. RCFC 12(b).

The Fifth Amendment to the United States Constitution provides, in part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The case law addresses two general categories of takings cases-physical and regulatory. A physical taking occurs "when the government encroaches upon or occupies private land for its own proposed use." *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). A regulatory taking occurs "when government action, although not encroaching upon or occupying private property, still affects and limits its use to such an extent that a taking occurs." *Cienega Gardens v. U.S.,* 265 F.3d 1237, 1244 (Fed.Cir.2001) (citing *Palazzolo,* 533 U.S. at 617, 121 S.Ct. 2448). Plaintiff is arguing here that a regulatory taking has occurred. *See* Compl. ¶ 50 ("The actions of Defendant[ ] restricting the access of Riviera Drilling to those wells operated by it are arbitrary and capricious and constitute an abuse of discretion. This arbitrary and capricious determination violates Plaintiff's Fifth Amendment right to be free from uncompensated takings."); Pl.'s Resp. at 10

(stating that "the [d]ual orders [from the USFS and BLM] to not access the properties [i.e., the natural gas wells in the Ragged Mountain Unit], and to shut down production, those orders did in fact cause compensable injury under the Takings Clause of the 5th Amendment").

As an initial matter, the court agrees with defendant that plaintiff's regulatory takings claim is not well-pleaded. *See* Def.'s Reply at 7 n.6 ("To allege a taking claim under the Tucker Act, plaintiff must concede the validity of the government action."). Plaintiff's complaint clearly states that the government actions in this case are not valid. *See, e.g.,* Compl. ¶ 43 (stating that "[t]he standard being applied by the USFS has no basis in law or in the leases"), ¶ 45 (stating that "[t]he USFS has. decided ... to impose a RUP bond amount which ... also is contrary to the law"), ¶ 50 (using the terms "arbitrary and capricious ... [and] an abuse of discretion" to characterize the "actions of Defendants"). Plaintiff later argues that its regulatory takings claim relates not to the permit bond requirement but to the "shut-in" order and the order not to access the gas wells. *See* Pl.'s Resp. at 10 (stating that "cause [of the] compensable injury under the Takings Clause of the 5th Amendment" was "the United States' orders to stay out of the National Forest and shut-in the wells").

 Even assuming, arguendo, that plaintiff's focus on the shut-in order and the access ban is appropriate, *but see infra* Section II.B.2.b.ii (for an explanation of why it is not), the court notes that plaintiff argues, once again, that these allegedly relevant government actions were "wrongful." *See id.* at 11 ("When the actions of the government directly result in the wrongful shutting down of production facilities, as in the present case, a taking has occurred ...."). A well-pleaded takings claim must allege that an authorized government action has interfered with a property owner's enjoyment of property. *See Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1362 (Fed.Cir.1998) (stating that when "the alleged taking consists of regulatory action that deprives a property-holder of the enjoyment of property, government agents have the requisite au-

thorization if they act within the general scope of their duties, i.e., if their actions are a 'natural consequence of Congressionally approved measures,' *NBH Land Co. v. United States,* 217 Ct.Cl. 41, 576 F.2d 317, 319 (1978), or are pursuant to 'the good faith implementation of a Congressional Act,' *Southern Cal. Fin. Corp. v. United States,* 225 Ct.Cl. 104, 634 F.2d 521, 525 (1980)"). Otherwise, a takings claim will not lie. *See id.* ("The principle underlying this rule is that when a government official engages in *ultra vires* conduct, the official 'will not, in any legal or constitutional sense, represent the United States, and what he does or omits to do, without the authority of Congress, cannot create a claim against the Government "founded upon the Constitution." ' " (quoting *Hoe v. United States,* 218 U.S. 322, 335, 46 Ct.Cl. 655, 31 S.Ct. 85, 54 L.Ed. 1055 (1910))). Plaintiff alleges a wrongful government action, not an authorized one, in its takings claim. Noting this defect in plaintiff's argument, the court nonetheless examines other aspects of plaintiff's allegation of a taking.

### i. Property Interest

The first step in analyzing both physical and regulatory takings claims is to determine whether a claimant has a property interest. *See, e.g., M & J Coal Co. v. United States,* 47 F.3d 1148, 1154 (Fed.Cir.1995) (stating, in a regulatory takings case, that a court should "[f]irst ... inquire into the nature of the land owner's estate to determine whether the use interest proscribed by the governmental action was part of the owner's title to begin with"); *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1580 (Fed.Cir.1993) (stating, in a physical takings case, that "[a] taking compensable under the Fifth Amendment inherently requires the existence of 'private property.' "). The second step in a takings analysis is to determine whether a taking occurred. *See, e.g., M & J Coal,* 47 F.3d at 1154 (stating that if a claimant can establish an interest in property, "the court must then determine whether the governmental action at issue constituted a compensable taking of that [interest]"); *Skip Kirchdorfer,* 6 F.3d at 1582 ("To recover under the Takings Clause, a claimant with a recognized property interest must show that its interest was 'taken.' ").

Defendant does not dispute, for the purpose of its motion, that Riviera has a property interest in the Ragged Mountain Unit. *See* Def.'s Mot. at 1 ("Plaintiff Riviera Drilling & Exploration Co., Inc. has operated and owned several natural gas wells in and around the Gunnison National Forest, Gunnison County, Colorado (in the Ragged Mountain Unit Area), for more than twenty years."). There is at least some evidence that Riviera possessed a "working interest" in natural gas deposits in the Ragged Mountain Unit. *See* Def.'s Reply at 3–4 (defining a working interest and citing to *Holcomb,* 149 IBLA at 231, for Riviera's working interest acreage in the Ragged Mountain Unit). For the purposes of deciding defendant's motion, the court will assume, without finding facts on this issue, that plaintiff does possess a recognized property interest in the Ragged Mountain Unit that might be subject to a compensable taking.

### ii. Ripeness of Takings Claim

■ Defendant argues, however, that plaintiff's takings claim is not ripe. Def.'s Mot. at 7–8. Defendant's ripeness challenge is based on the fact that plaintiff, once the bond requirement was imposed, never applied for a permit that was subsequently denied. *See id.* at 8 (stating that "[t]o establish a ripe taking claim, plaintiff would need to allege that it applied for and was denied a RUP"). Defendant's ripeness argument is also based on its contention that plaintiff's takings claim alleges, if anything, a temporary taking, rather than a permanent taking. Def.'s Reply at 5 n.4. Because plaintiff obtained a RUP and access to its natural gas wells shortly after the imposition of the bond requirement, Def.'s Mot. at 2, the court agrees with defendant that plaintiff "is alleging, at most, a temporary regulatory taking," Def.'s Reply at 5 n.4.

"[G]overnmental land-use regulation may under extreme circumstances amount to a 'taking' of the affected property." *United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 126, 106 S.Ct. 455, 88 L.Ed.2d 419

(1985) (citations omitted). But the mere imposition of a permitting process does not imply that a taking has occurred. *See id.* at 127, 106 S.Ct. 455 (noting that "the very existence of a permit system implies that permission may be granted" and that even a denial of a permit must prevent economically viable uses of the property to constitute a taking). As the Federal Circuit has stated:

> In other words, the initial denial of a permit is still a necessary trigger for a ripe takings claim. If the government denies a permit, then the aggrieved party can seek compensation.

*Boise Cascade Corp. v. United States,* 296 F.3d 1339, 1347 (Fed.Cir.2002) (footnote omitted [10]). Here, plaintiff was never denied a permit to use the Forest roads. Plaintiff's temporary takings claim is not ripe.

Plaintiff tries to avoid the ripeness requirement of a permit denial by stating that its taking claim is based not on the RUP but on the orders to "shut-in" and not access its natural gas wells.[11] *See* Pl.'s Resp. at 10 (stating that "it was neither the application for nor denial of a RUP that caused injury to Plaintiff, but rather it was the direct orders of the United States Forest Service and the Bureau of Land Management that caused the injuries complained of"). But, as defendant points out, it was only because its road use permit had expired that plaintiff was required to shut-in its wells. Def.'s Reply at 6 (stating that "Plaintiff here was prohibited from accessing wells it operated without first obtaining a [road use] permit"). Because the road use permit was the only way to gain access to the natural gas wells, the permitting process, not the order to shut-in the gas wells that was issued when plaintiff declined to apply for a road use permit, is the regulatory action at issue here.

### iii. Temporary Taking

Even if plaintiff were presenting a ripe temporary takings claim, defendant argues that plaintiff has not alleged the elements of a temporary taking. Def.'s Mot. at 8–10; Def.'s Reply at 7–8. Plaintiff asserts that a taking did occur in this case due to the "radical curtailment of a landowner's freedom [to make use of or derive income from his property] ... where the United States gives a direct order to not access the property, to shut down the income generating facilities on the property, and also backs those orders with threat of arrest and prosecution." Pl.'s Resp. at 10 (citing *Kirby Forest Indus., Inc. v. United States,* 467 U.S. 1, 13, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984)). The court gives the benefit of all reasonable factual inferences to the non-movant in deciding a summary judgment motion. *Matsushita Elec. Indus.,* 475 U.S. at 601, 106 S.Ct. 1348.

"[M]ere 'fluctuations in value during the process of governmental decision-making, absent extraordinary delay, are inci-

---

**10.** This footnote in *Boise Cascade* points out two exceptions to the temporary takings ripeness requirement for a permit denial. *See* 296 F.3d at 1347 n. 6 ("An extraordinary delay in permit processing or bad faith on the part of the agency can give rise to a ripe takings claim notwithstanding the failure to deny the permit." (citing *Wyatt v. United States,* 271 F.3d 1090, 1097–98 (Fed.Cir.2001))). Neither exception has been alleged by plaintiff here.

**11.** Even if the shut-in order and denial of access would, in other circumstances, constitute the relevant government action for a takings claim, there is no suggestion that the interruption in production here rose to the level of a temporary taking. *See Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 303, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (stating that "a regulation temporarily denying an owner all use of her property might not constitute a taking if the denial was part of the State's authority to enact safety regulations, or if it were one of the normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like" (citing *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 321, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987))); *Seiber v. United States,* 364 F.3d 1356, 1372 (Fed.Cir.2004) (affirming summary judgment despite an eighteen month delay against the plaintiffs because, among other reasons, "[t]he [plaintiffs'] temporary takings claim also fails under the *Penn Central [Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)]* test because they 'failed to introduce convincing evidence to show the amount, if any, by which the value of the relevant property ... was reduced' by the alleged temporary taking" (citing *Forest Props., Inc. v. United States,* 177 F.3d 1360, 1367 (Fed.Cir.1999))); *Dufau v. United States,* 22 Cl.Ct. 156, 163 (1990) (holding that a permitting delay of sixteen months did not "rise[] to the level of 'extraordinary delay' ").

dents of ownership.'" *Wyatt v. United States,* 271 F.3d 1090, 1098 (Fed.Cir.2001) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles,* 482 U.S. 304, 320, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987)). Thus, "only extraordinary delays in the permitting process ripen into a compensable taking." *Boise Cascade,* 296 F.3d at 1352. Plaintiff has alleged no extraordinary delay here. Having given all reasonable inferences to the facts as alleged by plaintiff, the court discerns no extraordinary delay in permitting here. And as the court discussed *supra* Section II.B.2.b, plaintiff also has failed to allege that an *authorized* government action effected a taking in this case. *See Seiber v. United States,* 364 F.3d 1356, 1367 (Fed.Cir.2004) (reviewing case law and noting that the Federal Circuit "has held that 'in a takings case we assume that the underlying governmental action was lawful'" (citing *Rith Energy, Inc. v. United States,* 270 F.3d 1347, 1352 (Fed.Cir.2001))).

The next step in a temporary takings analysis, where in cases of extraordinary delay the court tests the government action for the *Penn Central* factors demonstrating a compensable taking, is therefore unnecessary. *See Boise Cascade,* 296 F.3d at 1352 (stating that "[w]hether a particular extraordinary delay constitutes a taking is governed by *Penn Central* "). Because plaintiff has failed to allege the existence of the extraordinary delay element upon which it would bear the burden of proof at trial, defendant is entitled to summary judgment as a matter of law. *See id.* at 1349–50 ("[The plaintiff] d[id] not allege that the [United States Fish and Wildlife] Service engaged in extraordinary delay in processing its permit. Therefore, ... we must reject [the plaintiff's] regulatory takings claims because they are based on the mere imposition of a permitting requirement. Those [cited] cases make it perfectly clear that the imposition of such a requirement, without more, simply cannot give rise to a compensable taking.").

Plaintiff has not shown that there is a genuine issue of any material fact that would support a temporary regulatory takings claim in this case.

### III. Conclusion

For the foregoing reasons, defendant's motion to dismiss plaintiff's contract and takings claims, treated as a motion for summary judgment, is GRANTED. The Clerk is directed to dismiss plaintiff's complaint and to ENTER JUDGMENT for defendant.

IT IS SO ORDERED.